**UNITED STATES of America,**

v.

**Ramon TORRES, Appellant.**

No. 02–2268.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 11, 2002.

Decided Dec. 16, 2002.

* The Honorable Evan J. Wallach of the United States Court of International Trade, sitting by designation.

Before FUENTES and GARTH, Circuit Judges, and WALLACH, Judge.*

OPINION

WALLACH, Judge.

Appellant Ramon Torres appeals the district court's judgment of sentence. The district court ordered an upward departure from the Sentencing Guidelines pursuant to Torres's aggravating role in a drug importation conspiracy under U.S.S.G. § 3B1.1.[1] Torres challenged the court's finding that he was a leader or supervisor of the offense.

We will affirm.

**I.**

In the year 2000, Torres engaged in a conspiracy to import cocaine into the United States. Torrres claimed he was recruited by other individuals engaged in the importation scheme to assist them in their endeavor. Torres's role involved recruiting couriers in the United States; paying others to recruit individuals; providing the couriers with airline tickets and travel

1. The 2001 edition of the Guidelines Manual has been used in this case.

money; instructing the couriers where to go and what to do to obtain cocaine; receiving the cocaine when the couriers returned to the United States; and arranging to pay the couriers for their work.

In September 2000, Torres's co-defendant, Maria Ovalles, received a phone call from an acquaintance urging her to call Torres. Ovalles called Torres and Torres obliquely inquired if Ovalles was willing to travel abroad and bring back narcotics in exchange for money. Ovalles declined the offer but informed Torres she would recruit others willing to take the trip, provided she was paid a fee. Ovalles then contacted Yolanda Mendez and Iris Muniz to recruit both of them to travel abroad and bring back narcotics.

On October 3, 2000, Ovalles met with both Mendez and Muniz in Rochester, New York and gave them airline tickets to fly from Rochester to JFK Airport. Ovalles told them to travel to a specific location in the Bronx for a meeting with Torres to receive additional instructions. That day, Mendez and Muniz traveled to the Bronx and met with Torres. Torres instructed them to travel to Panama and told them that once in Panama, they would each receive a suitcase containing cocaine to bring back into the United States. Torres gave them cash and airline tickets, and told them to contact him upon their arrival in Panama. Torres promised to pay Muniz and Mendez $6,000 and $4,000 respectively, for taking the trip to Panama.

Once in Panama, the women were met at the airport, moved to several hotels, and eventually given two suitcases to bring back to the United States. As Torres has instructed, Mendez and Muniz carried the two suitcases into the United States through Newark International Airport, where both women were searched and found to be carrying cocaine.

On November 29, 2001, Torres pled guilty to a one-count indictment, which charged both Torres and Ovalles with knowingly and intentionally conspiring and agreeing with each other and with others to import into the United States from Panama more than 500 grams of cocaine.

The district court held a sentencing hearing on April 19, 2002. Among other things, the court found that Torres played a supervisory or managerial role in the conspiracy to import cocaine. The district court accordingly determined that Torres's conduct in the conspiracy warranted a two-level increase in the offense level for Torres's aggravating role pursuant to § 3B1.1. With a total offense level of 27 and a criminal history category of I, Torres's applicable guideline range was 70 to 87 months. The district court sentenced Torres to 70 months' imprisonment, four years of supervised release, and a special assessment of $100.

**II.**

We have jurisdiction to hear Torres's appeal pursuant to 18 U.S.C. § 3741 and 28 U.S.C. § 1291. We review a district court's finding of fact supporting an upward adjustment to a sentencing level for clear error. *United States v. Bethancourt,* 65 F.3d 1074, 1080 (3d. Cir.1995). Torres argues that the district court erred in imposing a two-level enhancement based on § 3B1.1(c) because there was insufficient evidence that Torres was a supervisor or manager.

Because § 3B1.1(c) provides a two-level enhancement if the defendant acted as either an organizer or leader, or alternately as a manager or supervisor, we have indicated that we will sustain a district court's decision to increase a defendant's offense level under that section if there are sufficient factual grounds for the district court to have concluded that the defendant acted in *any* of those roles. *United States v. King,* 21 F.3d 1302, 1305 (3d Cir.1994)

(citing U.S.S.G. § 3B1.1, Background Comment, which states that in "relatively small criminal enterprises ... the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility").

In assessing whether a defendant was an organizer or leader, the factors a sentencing court should consider include:

> the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercise over others.

U.S.S.G. § 3B1.1 Application Note 4; see also United States v. Phillips, 959 F.2d 1187, 1191 (3d Cir.1992).

The district court's finding that Torres played an aggravating role in the drug conspiracy was based on the unchallenged factual findings of the pre-sentence report, which the court adopted, as well as Torres's own admissions during his plea hearing.

At the plea hearing, Torres admitted to hiring and paying Ovalles to recruit others to travel to and from the United States in order to transport cocaine back into the county in suitcases. Torres admitted that in September 2000, he asked Ovalles to recruit two couriers to fly to Panama and that he paid for the two airline tickets to Panama for the couriers. He also acknowledged that he met with Muniz and Mendez in the Bronx on October 3, 2000, instructed them to travel to Panama and to bring back suitcases containing cocaine, provided them with airline tickets and travel money, and promised to pay them $6,000 and $4,000, respectively.

Such conduct constitutes management and supervision by Torres of Ovalles, Mendez, and Muniz. Although Ovalles initially contacted Torres, Torres nevertheless recruited Ovalles by asking her to take a trip overseas to transport narcotics in exchange for $6,000. Although she declined to act as a courier herself, Ovalles informed Torres that she would locate others willing to take the trip. Torres thus delegated to Ovalles the duty to recruit people to travel outside the country, receive narcotics, and travel back to the United States with narcotics. Torres paid Ovalles for her recruiting efforts. Torres acted as a mid-level manager; delegating certain duties while retaining responsibility for the project.

Torres also directly managed and supervised both Muniz and Mendez, once they had been recruited by Ovalles. He met them in the Bronx, instructed them on what they were to do once they arrived in Panama, gave them cash and airline tickets, and promised to pay them for taking the trip. In addition, Torres planned to take possession of the cocaine once the couriers returned to the United States. Torres's responsibility for distributing money to Ovalles, Muniz, and Mendez, as well as handling the cocaine upon its entrance into the county, shows that Torres maintained a position of authority and management within the drug conspiracy scheme. Accordingly, the district court correctly determined Torres' sentence based on an enhancement under § 3B1.1

### III.

For the foregoing reasons, we will affirm the district court's judgment of sentence.